326 P.2d 719

**Russell KANO and Tommy Seo, Plaintiffs and Respondents,**

v.

**ARCON CORPORATION and Barcon Corporation, Utah corporations, and Mae L. Bagley, Leo L. Capson, Glen L. Peck and Manford A. Shaw, Defendants and Appellants.**

No. 8739.

Supreme Court of Utah.

June 10, 1958.

432

Harold R. Boyer, Edward W. Clyde, Salt Lake City, for appellants.

Glen E. Fuller, Salt Lake City, for respondents.

HENRIOD, Justice.

Appeal from a judgment awarding damages resulting from an interference with plaintiffs' irrigation facilities and water rights. Affirmed, except as hereinafter modified. Costs to defendants.

By written stipulation filed herein, the parties have settled and eliminated a number of their differences and assigned errors. The lower court is directed, therefore, to modify the judgment in accordance with the terms of said stipulation. The stipulation will accompany this decision and upon remittitur shall become a part of the official record in this case.

The stipulation is such that now we are obliged only to examine the record to determine whether or not there was sufficient competent evidence to sustain the conclusions of the trial court on law matters and whether or not there is a preponderance of evidence in favor of the trial court's determination of the equitable aspects of the case.

It appears that by appropriation to a beneficial use, and by court decree,[1] the plaintiffs and their predecessors acquired rights to use a portion of the water coursing down a natural channel traversing the adjoining lands of the parties, in which channel waters had been running since time immemorial. More than half century ago, one of defendants' predecessors constructed a pond on the land for fish culture, and permitted one of plaintiffs' predecessors who owned the adjacent downstream property, to divert the water that he had been wont to use and that he had been diverting from the natural stream, directly from the pond by means of a ditch. Similar permission was given to divert the water from a lower pond that was constructed later.

In 1955 some of the defendants acquired the adjacent upstream property and subdivided it. They installed a drain that dried up the ponds. They ploughed over the natural channel and the ditches. This, to-gether with a leveling program, resulted in a return of the water downstream in the extended natural channel, about 7 feet below the point where the water had previously entered the land of plaintiffs in the natural stream, by gravity, prior to the time the water was diverted from the ponds and prior to the drainage process. It became necessary, therefore, for plaintiffs to hoist the water by pumping. The delay in installing a pump caused a celery crop failure, which, together with the operational expense incurred incident to the pumping, largely accounted for the damage judgment. Such judgment, except as it is to be modified, is supported by sufficient competent evidence in the record.

It seems that at the time the drain was installed, and thereafter, there was about as much water spilling into the natural channel from the drain as found its way there previously. Had the defendants deposited the water so that it could have been employed with the aid of gravity, as before, this litigation would not have ensued.

Defendants urge that this is simply a drainage, not a water case, and that a person, in improving his property, has a right to drain it with impunity, even though the water table in his neighbor's land be lowered. The cases cited to support the contention are those involving subterra-

1. Progress Co. v. Salt Lake City (3rd District Court No. 8921), 1918, 53 Utah 556, 557, 173 P. 705.

nean or percolating water cases. The instant case, however, has to do with a natural surface stream in the waters of which appropriators have acquired rights, having beneficially used them and having decreed rights therein, and involves also the fact that the drainage has rendered useless the irrigation facilities, a contractual easement, or an easement that one has in a natural stream leading to his property conveying appropriated water.[2] In rendering useless these interests, it is obvious that the plaintiffs were damaged, and the requirement of the lower court that the defendants, at their expense, deposit the water at the boundary of plaintiffs' land so that they may enjoy a gravity flow, seems fair and reasonable.

█ The defendants further contend that the court misapplied the rules relating to assessment of damages in a case like this, asserting that plaintiffs, if entitled at all, should be allowed only the reasonable rental value of the property, since the crops had not been planted yet. We recognize the merit of this general statement.[3] But here we have a situation where, although the crop was not planted out in the field, for a period of two months prior to the time defendants cut off plaintiffs' water supply, the plaintiffs had about 200,000 celery plants in a greenhouse, and there was little to do

except perform a simple transplant operation. Besides, there is evidence to the effect that the ground had been treated specially for celery growth.

█ The defendants urge further that irrespective of any question of actual damages, the plaintiffs should not be allowed damages since they failed to mitigate them. The answer seems to be that the record indicates that as soon as plaintiffs knew they were not to receive the accustomed water supply by gravity flow, they constructed a dam and bought pumping equipment as a substitute therefor, at a time when they were sorely pressed with other necessary farm chores. Such effort on the plaintiffs' part was in and of itself a mitigation of damages, even though it might be argued that had plaintiffs pursued some other course, the switch-over to pumped water might have been accomplished with a greater degree of economy.

Under the circumstances we do not believe the court erred in its application of damage principles or those with respect to mitigation thereof.

Counsel for all of the parties in this case are to be complimented for their friendly cooperation and assistance to the court by way of stipulation, eliminating matters that otherwise would have led to what would

2. Tripp v. Bagley, 1928, 74 Utah 57, 276 P. 912, 69 A.L.R. 1417.

3. McCormick, Damages, Sec. 126 (1935).

have been a much more protracted decision in this case.

McDONOUGH, C. J., and WADE, J., concur.

CROCKETT and WORTHEN, JJ., concur in the result.